## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RICHARD KING**                                    **CIVIL ACTION**

**VERSUS**                                          **NO.  09-3473**

**BURL CAIN, WARDEN**                               **SECTION "B"(2)**


### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Richard King, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On October 6, 2004, King was charged by bill of information in St. Tammany Parish with count one, the attempted first degree murder of Deputy Jack Admire, count two, the attempted first degree murder of Sergeant Brian Wetzel, and count three, aggravated flight from an officer.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> On September 28, 2004, the St. Tammany Parish Sheriff's Office was attempting to apprehend defendant on charges unrelated to the present appeal. Following an anonymous tip regarding defendant's whereabouts, Deputies Daniel Ard and Ronnie Plaisance were dispatched to the Pine Cliff Apartments.
> When Deputy Ard entered the parking lot of the apartment complex, he observed a white male he believed to be defendant, inside a pickup truck talking to a white male and white female, who were standing outside of the truck.  When Deputy Ard approached in his marked police unit, defendant fled from the truck and into a wooded area behind the complex.  Deputy Ard pursued defendant, but could not locate him.
> Throughout the evening, the Sheriff's Office received numerous conflicting tips regarding defendant's location.  Several deputies rotated through the apartment complex parking lot in an effort to keep defendant's vehicle under surveillance.  Corporal Darrell Oalmann was conducting surveillance on the parking lot when he observed a man dressed in camouflage walk to defendant's truck, get in, and drive away.  Corporal Oalmann radioed this information to the dispatcher.
> Deputy Jack Admire was at the Chevron station at the intersection of Louisiana Highways 59 and 1088, when he heard the radio dispatch regarding defendant leaving the apartment complex parking lot.  Deputy Admire immediately activated his lights and siren and proceeded to drive the half mile

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 2 of 5, Bill of information, 10/6/04.

along Hwy. 1088 to the Pine Cliff Apartments.  Deputy Chris Booth, who also had activated his unit's lights and siren, followed Deputy Admire.

When Deputy Admire arrived at the complex, he observed defendant attempting to pull onto Hwy. 1088.  Deputy Admire pulled his unit across the complex driveway and began to get out of his unit.  Suddenly, Deputy Admire heard the sound of defendant's tires squealing.  Fearing that defendant was about to hit him with his truck, Deputy Admire turned and got back into his unit.

When he looked up, Deputy Admire saw that the taillights of defendant's truck had passed and that the truck had entered a large ditch parallel to Hwy. 1088.  It appeared that defendant had lost control of his vehicle because it was fishtailing in the ditch.  Suddenly, the tires of the truck found traction and defendant was able to get out of the ditch and accelerate down Hwy. 1088.

Deputies Admire and Booth gave chase, with their pursuit reaching the speed of 80 mph.  As Deputy Admire followed defendant's vehicle, he could see Sergeant Brian Wetzel's unit ahead of them on Hwy. 1088.  Sergeant Wetzel's unit was recognizable because it was only equipped with deck lights, which were activated.

Attempting to intercept defendant, Sergeant Wetzel pulled his unit into defendant's lane of travel and stopped.  Sergeant Wetzel could see that defendant was accelerating towards him, so he moved back into his travel lane and again stopped his unit.  Defendant continued to accelerate towards him and even moved into Sergeant Wetzel's lane.  Fearful that defendant was about to hit his unit, Sergeant Wetzel quickly put his unit in reverse and backed off Hwy. 1088 into an adjacent driveway.  Defendant's vehicle then passed Sergeant Wetzel at a high rate of speed heading toward the Hwy. 59 intersection.

Sergeant Wetzel joined the pursuit of defendant as the lead unit.  When defendant reached the intersection of Hwys. 1088 and 59, he cut through the parking lot of the Chevron gas station at a high rate of speed.  Defendant then continued northbound on Hwy. 59, still being pursued by the police.  While on Hwy. 59, defendant's vehicle reached a speed in excess of 90 mph.

Defendant soon came upon the intersection of Hwy. 59 and Lonesome Road.  Sergeant Wetzel noted that there was a red light in their lane of travel and began to slow down; defendant briefly applied his brakes just before going through the intersection, then made a sharp left turn onto Lonesome Road.  Defendant immediately lost control of his vehicle, left the roadway and crashed into a tree.

Within seconds of the crash, Sergeant Wetzel arrived at the scene and exited his unit with his weapon drawn.  Sergeant Wetzel ordered defendant to get out of his truck and raise his hands where they could be seen.  Defendant did not immediately comply with these repeated orders, but as Deputies Admire and Booth arrived, he got out of his truck.

Defendant ignored Sergeant Wetzel's order to get on the ground and began approaching the police officer, whose weapon was pointed at him. In an effort to subdue defendant, Deputy Booth shot defendant with a Taser gun, administering a five-second electrical shock. After the shock ended, defendant attempted to get up against the orders of the police to lie down. Deputy Booth administered a second five-second shock. Following this shock, defendant lunged at Deputy Admire. A third five-second shock was administered, along with the use of pepper spray. Defendant finally complied with orders to stay on the ground and was handcuffed.

State v. King, 941 So.2d 197 (La. App. 1st Cir. 2006) (Table); State v. King, No. 2006-KA-0396, 2006 WL 3109456, at *1-2 (La. App. 1st Cir. Nov. 3, 2006) (unpubl.); State Record Volume 5 of 5, Louisiana First Circuit Court of Appeal Opinion, 2006-KA-0396, pp. 2-5, November 3, 2006.

King was tried before a jury on January 10 and 13, 2005.[4] The jury returned a verdict of not guilty on count one (attempted first degree murder of Admire), guilty of attempted manslaughter on count two (as to Wetzel), and guilty as charged on count three (aggravated flight).[5]

On April 18, 2005, the state trial court sentenced King to serve consecutive sentences of 20 years in prison on count two and two years in prison on count three.[6] After considering the evidence in support of the amended multiple offender bill filed by

---

[4]St. Rec. Vol. 2 of 5, Trial Minutes, 1/10/05; Trial Minutes, 1/13/05; St. Rec. Vol. 3 of 5, Trial Transcript, 1/10/05; St. Rec. Vol. 4 of 5, Trial Transcript (continued), 1/10/05; Trial Transcript, 1/13/05.

[5]Id.

[6]St. Rec. Vol. 2 of 5, Sentencing Minutes, 4/18/05; St. Rec. Vol. 4 of 5, Sentencing Transcript, 4/18/05.

4

the State, the court re-sentenced King to serve life in prison on counts two <u>and</u> three to be served without benefit of parole, probation or suspension of sentence.[7]

On August 5, 2005, King's counsel moved for and was granted an out-of-time appeal in which he raised the following assignments of error:[8] (1) The trial court abused its discretion in failing to grant the motion to sever counts one and two from count three. (2) The trial court unduly prejudiced King's right to a defense and to due process when it failed to grant a motion to continue the trial after counsel was newly enrolled. (3) The trial court should have declared a mistrial based on the prosecutor's reference to inadmissible hearsay in his opening statement. (4) The trial court erred in allowing the prosecutor improperly to discuss principles of law in his closing argument. (5) The evidence was insufficient to support the conviction for attempted manslaughter. (6) The life sentence was unconstitutionally excessive.

On November 3, 2006, the Louisiana First Circuit Court of Appeal affirmed the convictions finding the claims to be without merit.[9] The court also conducted an errors patent review and determined that the trial court erred in enhancing the sentences on both

---

[7]<u>Id</u>.; St. Rec. Vol. 3 of 5, Multiple Bill, 1/18/05; First Amended Multiple Bill, 2/9/05.

[8]St. Rec. Vol. 3 of 5, Motion for Out-of-Time Appeal, 8/5/05; Trial Court Order, 8/11/05; St. Rec. Vol. 1 of 5, Appeal Brief, 2006-KA-0396, 5/11/06.

[9]<u>State v. King</u>, 2006 WL 3109456, at *3-8; St. Rec. Vol. 5 of 5, 1st Cir. Opinion, 2006-KA-0396, pp. 5-15, 11/3/06.

counts under the multiple bill.[10]  The court, therefore, vacated the habitual offender adjudication and sentence and remanded the matter for further proceedings.[11]

The State thereafter filed another multiple bill as to count two, the attempted manslaughter conviction.[12]  At a hearing held on March 1, 2007, the state trial court re-sentenced King to serve consecutive sentences of 20 years on count two and two years on count three.[13]  The court thereafter adjudicated King to be a third felony offender and re-sentenced him on count two only to serve life in prison without benefit of parole, probation or suspension of sentence.[14]

King did not seek review of or leave to appeal this sentence.  His convictions and sentences therefore became final 30 days later, on Monday, April 2, 2007.[15]  La. Code Crim. P. art. 914;  Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) ("a conviction becomes final when the time for seeking further direct review in the state court expires.")

---

[10]State v. King, No. 2006-KA-0396, at *2 (La. App. 1st Cir. Nov. 3, 2006) (unpubl.); State Record Volume 5 of 5, Louisiana First Circuit Court of Appeal Opinion, 2006-KA-0396, pp. 2-5, November 3, 2006.

[11]Id.

[12]St. Rec. Vol. 5 of 5, Multiple Bill, 11/16/06.

[13]St. Rec. Vol. 5 of 4, Multiple Bill Hearing Minutes, 3/1/07; Multiple Bill Hearing Minutes (corrected), 3/12/07.

[14]Id.

[15]The 30th day was Saturday, March 31, 2007, and the deadline therefore moves to the following business day.

(quoting Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003)); Burton v. Stewart, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)); see also, Jiminez v. Quarterman, __ U.S.__, 129 S. Ct. 681, 686-87 (2009) (where a state court grants a criminal defendant the right to file an out-of-time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review).

On January 8, 2008, King submitted an application for post-conviction relief to the state trial court in which he asserted five grounds for relief:[16] (1) There was insufficient evidence to convict for attempted manslaughter. (2) He was denied the right to testify at trial. (3) The trial court erred in allowing the prosecutor to elicit testimony of prior bad acts. (4) Counsel allegedly gave ineffective assistance where he failed to (a) investigate and prepare for trial, (b) allow King to testify at trial, (c) prepare King to testify, and (d) explore or prepare an intoxication defense. (5) Counsel allegedly gave ineffective assistance on appeal for failure to file a writ application to the Louisiana Supreme Court after the appellate court ruled on the out-of-time appeal.

---

[16] St. Rec. Vol. 5 of 5, Application for Post-Conviction Relief, 1/9/08 (dated 1/8/08).

The state trial court denied relief, finding that King's first and third claims were repetitive of matters resolved on appeal and not subject to review under La. Code Crim. P. art. 930.4.  The court also ruled that the second claim did not present a claim that could be reviewed on post-conviction application under La. Code Crim. P. art. 930.3. The court denied relief on the ineffective assistance of counsel claims, finding that King failed to establish any deficiency in counsel's performance.[17]

King sought review in the Louisiana First Circuit, and the writ application was denied without stated reasons on June 6, 2008.[18]  The Louisiana Supreme Court subsequently denied King's related writ application without reasons on April 3, 2009.[19]

## II.   FEDERAL HABEAS PETITION

On June 15, 2009, the clerk of this court filed King's petition for federal habeas corpus relief in which he asserted five grounds for relief:[20] (1) There was insufficient evidence to convict for attempted manslaughter. (2) He was denied the right to testify at

---

[17]St. Rec. Vol. 5 of 5, 22d JDC Order, Case No. 387036, 3/20/08.

[18]St. Rec. Vol. 5 of 5, 1st Cir. Order, 2008-KW-0642, 6/6/08. The state court record does not include a copy of this writ application. However, the state trial court issued an order on April 21, 2008, in which it "acknowledge[d] that [King] is applying for Supervisory Writs contesting the ruling of this Honorable Court denying his Post Conviction Relief Claims" and granted him until May 30, 2008 to file the writ application.  St. Rec. Vol. 5 of 5, Notice of Intent, 4/3/08 (dated 4/1/08); Trial Court Order, 4/21/08. King claims to have submitted it for timely filing on April 7, 2008. Rec. Doc. No. 3-4, p. 54.

[19]State ex rel. King v. State, 6 So.3d 762 (La. 2009); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2008-KH-1449, 4/3/09. The state court record does not include a copy of this writ application. King claims to have submitted it for timely filing on June 18, 2008. Rec. Doc. No. 3-5, p. 39.

[20]Rec. Doc. No. 3.

trial. (3) The trial court erred in allowing the prosecutor to elicit testimony of prior bad acts. (4) Counsel gave ineffective assistance when he failed to (a) investigate and prepare for trial, (b) allow King to testify at trial, (c) prepare King to testify, and (d) explore or prepare an intoxication defense. (5) Counsel gave ineffective assistance on appeal for failure to file a writ application to the Louisiana Supreme Court after the appellate court ruled on the out-of-time appeal.

The State filed an answer and memorandum in opposition to King's petition, arguing that the claims are without merit.[21] King filed a traverse to the State's memorandum in opposition in which he re-urges the merits of his claims.[22]

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[21]Rec. Doc. Nos. 11, 12.

[22]Rec. Doc. No. 13.

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to King's petition, which, for reasons discussed below, is deemed filed in this federal court on April 30, 2009.[24]

The threshold questions in habeas review under the AEDPA are whether the petition is timely filed and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

Here the State concedes, and I find, that King's federal petition was timely filed, and his claims are exhausted.  The State did not address procedural default.  I note, however, that the state trial court barred review of King's first (insufficient evidence) and third (other crimes evidence) claims on post-conviction review pursuant to La. Code Crim. P. art. 930.4(A).  This provision precludes post-conviction review of claims

---

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  King's petition was filed by the clerk of this court on June 15, 2009, when the filing fee was paid after denial of his pauper application.  King's signature on the petition is dated April 30, 2009.  This is the earliest date on which he could have delivered the set of pleadings to prison officials for mailing.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

already "fully litigated" on direct appeal.  Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994).

It appears, however, that King did not seek review of his direct appeal in the Louisiana Supreme Court, and therefore did not "fully litigate" the merits of his claims before the Article 930.4(A) bar was imposed.  He therefore would not benefit from the Bennett relief from a complete bar to review of his repetitive claims in this federal court. See Guillory v. Cain, 65 Fed. Appx. 95, 97 (5th Cir. Oct. 8, 2007) (recognizing a distinction from Bennett where a claim is not fully litigated through the state courts, including a writ application to the Louisiana Supreme Court).  Nevertheless, because the State does not assert the procedural bar, I will address the merits of King's claims.

IV.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The statute also codifies the

"presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)),  aff'd in part, rev'd in part on  other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

12

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.    SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 1)

King argues that the evidence was insufficient to support the verdict of attempted manslaughter of Sergeant Wetzel.  He specifically argues that the evidence did not establish that he had a specific intent to kill Sergeant Wetzel.

King's counsel raised this claim on direct appeal to the Louisiana Fourth Circuit. Applying the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state law, the Louisiana First Circuit reviewed the trial testimony of Sergeant Wetzel and determined that the evidence, taken in the light most favorable to the prosecution, was sufficient to support the jury's verdict, including a finding that King had specific intent to kill Wetzel.  This was the last discussion of the merits of this claim by a state court.

Under Jackson, the court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Jackson, 443 U.S. at 319; Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. Alexander v. McCotter, 775 F.2d 595, 597-98 (5th Cir. 1985); Turner v. McKaskle, 775 F.2d 999, 1001 (5th Cir. 1983). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. Guzman, 934 F.2d at 82 (citing Tyler v. Phelps, 643 F.2d 1095, 1102 (5th Cir. 1981)).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. United States v. Young, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993); see also Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. Ramirez v. Dretke, 398

14

F.3d 691, 695 (5th Cir. 2005).  A reviewing habeas court is <u>not</u> authorized to substitute

its interpretation of the evidence or the credibility of witnesses for that of the fact-finder.

<u>Alexander</u>, 775 F.2d at 598.

A claim of insufficient evidence presents a mixed question of law and fact.  <u>Maes</u>

<u>v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine

whether the state courts' denial of relief was contrary to or an unreasonable application

of United States Supreme Court precedent.

In Louisiana, manslaughter is defined as a "homicide which would be first or

second degree murder, but the offense is committed in sudden passion or heat of blood

immediately caused by provocation sufficient to deprive an average person of his

self-control and cool reflection."  La. Rev. Stat. Ann. § 14:31(A)(1); <u>State v. Logan</u>, 34

So.3d 528 (La. App. 2d Cir. 2010); <u>State v. Quiambao</u>, 833 So.2d 1103 (La. App. 2d Cir.

2002).  "'Sudden passion' and 'heat of blood' are not elements of the offense of

manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit

a degree of culpability less than that present when the homicide is committed without

them."  <u>State v. Logan</u>, 34 So.3d at 535 (citing <u>State v. Lombard</u>, 486 So.2d 106 (La.

1986)); <u>State v. Laird</u>, 30 So.3d 1167 (La. App. 3rd Cir. 2010).  Thus, it is the

defendant's burden to prove by a preponderance of the evidence that he acted in "sudden

passion" or "heat of blood" for a verdict of manslaughter to be appropriate.  <u>State v.</u>

Robinson, 754 So.2d 311 (La. App. 2d Cir. 2000).  Although specific intent to kill is not necessary for a conviction of manslaughter, proof of a specific intent to kill is required for a conviction of attempted manslaughter.  State v. Hutcherson, 785 So.2d 140 (La. App. 2d Cir. 2001); State v. Jones, 4 So.3d 950 (La. App. 2d Cir. 2009).

A person attempts a crime when he, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his objective.  La. Rev. Stat. Ann. § 14:27.  The State is not required to prove that, under the circumstances, the person would have actually accomplished his purpose.  Id.

Specific criminal intent, as required to prove attempted manslaughter, is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."  State v. Williams, 670 So.2d 414, 418-19 (La. App. 3rd Cir. 1996) (quoting La. Rev. Stat. Ann. § 14:10(1).  Because specific criminal intent is a state of mind, it may be inferred from the circumstances present in the case and the actions of the defendant.  State v. Williams, 670 So.2d at 419 (citing State v. Hongo, 625 So.2d 610 (La. App. 3rd Cir. 1993)).  The determination of whether the requisite intent is present in a criminal case is for the trier of fact.  State v. Huizar, 414 So.2d 741 (La. 1982).

The Louisiana First Circuit referred to the testimony of Sergeant Wetzel to establish that the evidence was sufficient to support the jury's verdict, including a finding

16

of specific intent to kill.[25]  At trial, Sergeant Wetzel testified that, while the officers were looking for King, he was spotted leaving his apartment complex in a pick-up truck.[26] Sergeant Wetzel stated that, when pursuit began, he waited in an area about one quarter of a mile west of King's apartment complex on Highway 1088.[27]  When he heard over the radio that King was headed westbound, in his direction, he turned his deck lights on and pulled his marked car onto the highway in King's westbound lane.  He did so in an effort to stop him.

Sergeant Wetzel could see the headlights of the truck and determined that the truck was accelerating towards him.[28]  He believed the truck would hit him, so he decided to move his car back into his own lane of travel, where he stayed stationary with his lights flashing.  King, who was still fleeing from pursuing officers, then veered into Wetzel's lane and accelerated toward his car.  Realizing that he would be hit by King's truck,

---

[25]As noted by the Louisiana court, the intent to commit great bodily harm is not an element of attempted manslaughter in Louisiana, State v. Brunet, 674 So.2d at 347, and King's arguments regarding that element need not be discussed by this Court.

[26]St. Rec. Vol. 4 of 5, Trial Transcript, p. 35, 1/13/05.

[27]Id., p.36.

[28]Id.

Wetzel backed his unit into a nearby driveway to avoid being struck.[29]  King drove past and continued to flee from the officers.[30]

Wetzel and the other officers continued to pursue King, until he lost control of his truck and hit a tree.[31]  When King exited his vehicle, Wetzel drew his gun and ordered King to the ground.[32]  King ignored him and continued to walk toward Wetzel.[33]  The other officers fired a taser to stop King's aggressive behavior,[34] but when the taser stopped, King lunged toward the closest officer.  The officers also used a pepper spray to subdue King.[35]  King eventually acquiesced and was handcuffed and sent to a hospital for examination.

Wetzel also testified that he believed King was desperate to escape.[36]  Wetzel feared for his life and safety as King's truck approached him on the highway.[37]

---

[29]Id., pp. 36-37.

[30]Id., p. 37.

[31]Id., p.38-42.

[32]Id., p. 43-44.

[33]Id., p. 44.

[34]Id., pp. 44-45.

[35]Id., p. 46.

[36]Id., pp. 53-54.

[37]Id., p. 67.

18

As found by the state appellate court, the jury apparently determined from all of the circumstances that King had the specific intent to kill Sergeant Wetzel, driven by his desire to succeed in his flight and escape from apprehension by police, and by his clear desire to remain free from restraint.

King argues that his failure to hit the police car is relevant to establish that he did not intend harm or to kill Sergeant Wetzel. The evidence before the jury showed that King continued to accelerate toward Wetzel's police car when Wetzel attempted to block his lane. When Wetzel moved his car, King changed lanes and continued to speed toward the police car without variance. It was only Wetzel's decision to move the car a second time that kept the cars from colliding. The jury clearly found Wetzel's version of the facts, and his expression of fear, fully credible.

I find that the evidence of record, taken in a light most favorable to the prosecution, was sufficient to establish that King, provoked by a loss of self-control and burning desire to escape, had specific intent to kill Sergeant Wetzel and took actions toward achieving that goal by driving his car in the wrong lane at a high rate of speed towards Wetzel's car.

The state court's denial of relief on this claim was not contrary to, or an unreasonable application of Jackson. King is not entitled to relief on this claim.

VI.    RIGHT TO TESTIFY

King alleges that his trial counsel denied him the right to testify on his own behalf. King claims that he wanted to take the stand to "reveal his mindset and actions during the incident in question."[38] He further argues that counsel usurped his right to make that decision himself. He asserts that counsel told a jury panel during voir dire that he, as the lawyer, would make that call. He also claims that counsel refused to heed his requests to testify. King claims that his counsel would not allow him to testify and has since failed to respond to his request to provide an affidavit confirming this action. Contrary to this assertion, however, King also argues that his "counsel never talked to his client about testifying, much less prepared him for testifying or cross-examination."[39]

King asserted this claim in his application for post-conviction relief, which was denied by the state trial court as inappropriate for post-conviction review under La. Code Crim. P. art. 930.3. This was the last reasoned decision on the issue. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. Rock v. Arkansas, 483 U.S. 44 (1987); Jordan v. Hargett, 34 F.3d 310, 312 (5th Cir.1994). When as here, the

---

[38]Rec. Doc. No. 3, p. 28.

[39]Rec. Doc. No. 3, p. 28.

petitioner alleges that his counsel, not the court or the State, prevented him from testifying, the United States Court of Appeals for the Fifth Circuit has held that the "appropriate vehicle for such claims is a claim of ineffective assistance of counsel." Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001) (quoting United States v. Brown, 217 F.3d 247, 258-59 (5th Cir. 2000)).  King has also separately presented this claim as part of his ineffective assistance of counsel argument, and I will address that claim later in this report.

Insofar as the claim may also be urged as a direct violation of the right to testify, however, King has not shown that he is entitled to relief.  A defendant can only waive his right to testify if that waiver is knowing, intelligent and voluntary.  Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997).  A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'"  Id. (quoting United States v. Teague, 908 F.2d 752, 759 (11th Cir. 1990), reh'g granted, 953 F.2d 1525 (11th Cir.), cert. denied, 506 U.S. 842 (1992)).

A habeas petitioner has the burden of proving that he was denied this constitutional right.  "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand."  Turcios v.

Dretke, No. H-97-0515, 2005 WL 3263918 at *6 (S.D. Tex. 2005) (citing Underwood
v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991)).

The Underwood court specifically noted the potential problems that were bound
to arise if habeas petitioners, making similar arguments, are not required to satisfy the
required burden of proof.  Underwood, 939 F.2d at 475-76.  Adopting the reasoning in
Siciliano v. Vose, 834 F.2d 29, 31 (1st Cir. 1987), the Underwood court recognized that
such an assertion, even if made under oath, "is insufficient to require a hearing or other
action on his claim that his right to testify in his own defense was denied him.  It just is
too facile a tactic to be allowed to succeed.  Some greater particularity is necessary – and
also we think some substantiation is necessary, such as an affidavit from the lawyer who
allegedly forbade his client to testify – to give the claim sufficient credibility to warrant
a further investment of judicial resources in determining the truth of the claim."  Id., 939
F.2d at 475-76.  I find this analysis persuasive.

King's reference to counsel's comments during voir dire is taken out of context.
In a hypothetical exchange with two panel members, one of the prospective jurors
indicated that he felt an innocent person would want to testify on his own behalf,
dependent upon what his lawyer advised.[40]  In an effort to redeem the jurors, counsel
briefly mentioned the role a lawyer plays in putting on a defense; i.e. advising his client

_____

[40]St. Rec. Vol. 3 of 5, Trial Transcript, pp. 76-77, 1/10/05.

to testify or not, in light of whether he, as the lawyer, felt the State had proven its case.[41] This was not an indication that counsel alone would decide whether King would testify.

In the instant matter, there is no evidence to support King's claim that his lawyer prevented him from testifying.  Although King suggests that he wanted to testify, he has not presented any evidence which would indicate this to be true.  King's self-serving suggestion that he submitted an affidavit to counsel is also not supported by the record. He has submitted no evidence to establish any attempt to present an affidavit to counsel that would support this claim.  The record shows that King simply acquiesced to what appears to have been the sound advice of counsel that he not testify.  The transcript is devoid of any discussion on the record by King or his counsel that King wished to testify or disagreed with his counsel's advice.

King's argument, therefore, is in the same posture as that invalidated and rejected in the Underwood case.  There is nothing in this record sufficient to prove a true violation of his right to testify.

I find that the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  King is not entitled to habeas corpus relief on this claim.

---

[41]Id., p. 77.

VII.   EVIDENCE OF PRIOR BAD ACTS (CLAIM NO. 3)

King alleges that he was denied a fair trial when the State referred to and introduced testimony indicating that he was already a fugitive running from the law to avoid prison time.  He argues that this was inadmissible evidence of other crimes or prior bad acts under La. Code Evid. art. 404(B).  He also contends that this prejudiced him before the jury, indicating that he was guilty because he was a bad person.

King raised this issue in his application for post-conviction relief to the state trial court.  The court did not address the merits of the claim and instead dismissed it as repetitive of claims addressed on direct appeal. The state trial court apparently was referring to King's claim on direct appeal that the flight from an officer count should have been severed as prejudicial to the defenses to the attempted murder counts.  In addressing that issue, the Louisiana First Circuit held that the reference to King's efforts to flee was an integral part of the State's proof that the flight was done under circumstances that endangered human life.  The court also found that the presentation of evidence as to the three crimes did not unduly prejudice King, as demonstrated by the jury's separate not guilty and attempted manslaughter verdicts on the two murder charges.  The subsequent opinions denying relief on the post-conviction "prior bad acts" claim issued by the Louisiana First Circuit and the Louisiana Supreme Court were without stated reasons.

24

This issue presents a mixed question of law and fact.  Dickson v. Sullivan, 849 F.2d 403, 405-06 (9th Cir. 1988).  Under the applicable standard of review, this court therefore must determine if the state court's decision to admit the evidence is contrary to or involved an unreasonable application of Supreme Court precedent.

Habeas corpus review is, of course, limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992); see Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  States are free to implement procedures regarding the admissibility of evidence, provided that those procedures do not infringe on a constitutional guarantee. Burgett v. State of Texas, 389 U.S. 109 (1967).  Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. Lisenba v. People of the St. of Cal., 314 U.S. 219, 236-37 (1941); Swarthout, 131 S. Ct. at 861-62; Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

To whatever extent, therefore, that King argues that the admission of evidence related to his fugitive status was inadmissible under state law, this court will not review

such a claim.  Instead, the court will consider King's federal constitutional claim that the evidence violated the Fourteenth Amendment.  Due process considerations require this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  Swarthout, 131 S. Ct. at 861 (citing Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).  To assess whether there has been a due process deprivation, the court must consider whether Louisiana's law provided King with a protected interest in not having the prior bad acts evidence admitted at his trial.  In this case, it did not.

In State v. Prieur, 277 So.2d 126 (La. 1973), the Louisiana Supreme Court held that evidence of other acts of misconduct is generally not admissible to show the defendant's bad character, but that such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding.  See also La. Code Evid. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La. 1993).  Under Louisiana law, to constitute impermissible other crimes or prior bad acts evidence, the evidence must unambiguously implicate the defendant in another crime.  State v. Edwards, 406 So.2d 1331, 1349 (La. 1981); State v. Holmes, 841 So.2d 80 (La. App. 4th Cir. 2003).

In this case, on questioning by the prosecutor, the officers testified that on and prior to September 28, 2004, the Sheriff's Office had been trying to locate King, who had been avoiding apprehension on another offense.[42]  The State also generally referenced the fact that King had been avoiding arrest on another offense, and even referred to King as a "desperate fugitive" at times.[43]

In his traverse, however, King concedes that, prior to trial, the parties stipulated that the State could refer to the fact that they were executing a warrant on another offense for which he was a wanted fugitive.[44]  In keeping with that agreement, no further explanation of or reason for this effort was mentioned.  In other words, the jury never heard why the officers were looking for King and were never told what the prior act was.  A reading of the trial transcript as a whole reflects that there was no mention of the details of any prior crime or bad act that led the officers to look for King.

It also appears that the evidence of King's desperation in his flight may have prompted the jury to find attempted manslaughter and not attempted first degree murder as he was originally charged.  That desperation was, of course, precipitated by his desire not to be apprehended on the prior warrant sought to be executed by the officers.  In this

---

[42]St. Rec. Vol. 4 of 5, Trial Transcript, pp. 32, 34 (Sergeant Wetzel), pp. 68, 70, 73, (Deputy Ard), pp. 75, 76 (Deputy Admire), 1/13/05.

[43]Id., pp. 21, 22, 116, 117

[44]Rec. Doc. No. 13, p. 7; St. Rec. Vol. 3 of 5, Trial Transcript, pp. 3-4 (stipulation), 1/10/05.

respect, the reference to which he stipulated was beneficial to King and not prejudicial as he suggests.

Thus, the testimony concerning King's fugitive status did not fit the definition of prohibited other crimes evidence under Louisiana law. The reference was not introduced to impugn King's character or depict him as a bad man. Instead, the testimony was presented to establish an integral part of the sequence of events which led the officers to look for King on September 28, 2004. See Robinson v. Whitley, 2 F.3d 562, 566-67 (5th Cir. 1993) (evidence was admissible under Louisiana law where it had independent relevance as an integral part of the crime or the sequence of events) (citing State v. Edwards, 406 So.2d at 1350-51 and State v. Guillory, 201 La. 52, 9 So.2d 450 (La. 1942)).

King has not demonstrated in the instant case that the reference to his fugitive status constituted prohibited evidence of other crimes or prior bad acts which could have rendered his trial unfair. Instead, it was an integral part of the total transaction of his criminal proceedings. Thus, he "has no basis for any alleged due process violation" or for a denial of a fundamentally fair trial. Robinson, 2 F.3d at 567; Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998). The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. King's claim is without merit.

VIII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIMS NOS. 4 AND 5)

King alleges that his counsel provided ineffective assistance at trial and on appeal because he failed to investigate and prepare for trial, allow King to testify at trial, prepare King to testify, explore or prepare an intoxication defense and file a writ application to the Louisiana Supreme Court after the appellate court ruled on his out-of-time appeal. King raised these arguments in his application for post-conviction relief, which was denied as meritless by the state trial court on the finding that King failed to establish any deficiency in counsel's performance.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in  Strickland, 466 U.S. at 668, which was relied on by the state trial court.  In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  Second, "[t]he defendant must

29

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th

30

Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient.  Id.

A.    Failure to Investigate and Prepare for Trial

King's claim is apparently based upon counsel's argument in support of a motion to dismiss urged before and again during trial.  The record reflects that King's counsel

was retained several weeks before the January 10, 2005, trial setting.[45]  The prosecutors, in an apparent effort to maintain the trial date, filed copies of their entire file into the court's record, so that defense counsel would have access to everything given to the public defender previously enrolled in the case.[46]  The state trial court stated that prior pretrial discussions with counsel had led to a determination that trial would proceed as scheduled, and the court denied the defense motion to continue.[47]

King's counsel renewed the motion to continue before the start of trial on January 13, 2005.[48]  Counsel indicated that his pretrial investigation had uncovered facts and circumstances which arguably could support a defense if additional time were provided to develop the facts.[49]  The court denied the motion, noting that the discovery documents, including those sought by retained counsel, had all been provided and counsel accepted the case knowing of the impending trial date.[50]

The record as a whole makes clear that counsel did in fact engage in pretrial investigation and discovery in preparation for trial.  It was counsel's investigation that

---

[45]St. Rec. Vol. 3 of 5, Trial Transcript, p. 2, 1/10/05.

[46]Id.

[47]Id., p. 3.

[48]St. Rev. Vol. 4 of 5, Trial Transcript, pp. 5-6, 1/13/05.

[49]Id., p. 6.

[50]Id., pp. 7-8.

prompted him to ask the court for additional time.  In fact, the record indicates that counsel's preparation discovered "numerous items," including documents or photographs that had not been seen by the prosecutor before the date of trial.[51]

The transcript also reveals that defense counsel vigorously cross-examined each of the State's witnesses in an effort to discredit the allegation that King attempted to murder the officers.  In fact, in arguing for a severance on the allegedly conflicting defenses to the flight charge, counsel made clear prior to trial that "we are prepared to proceed on the two counts of attempt murder."[52]

The record in <u>no</u> way demonstrates that counsel was unprepared to proceed to trial on the three charges or that counsel failed to investigate before trial.  King has not shown a deficiency in counsel's performance or any prejudice resulting from counsel's actions. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, <u>Strickland</u>.  He is not entitled to relief on this claim.

B.    <u>Refusal to Allow King to Testify or to Prepare King to Testify</u>

I have already addressed King's argument that he was denied the right to testify as a separate claim.  He has also asserted this claim as one raising ineffective assistance of counsel.  He adds a claim that counsel erred in failing to prepare him to testify.  I note

---

[51]<u>Id</u>., p. 8.

[52]<u>Id</u>., p. 5.

that this would only have been relevant if King had testified and counsel did not prepare him.  Since King did not testify, that argument is moot.  The discussion of King's claim in this regard instead must focus on counsel's advice not to testify.

King has not demonstrated any deficiency or prejudice resulting from counsel's advice not to testify under the standards set forth in <u>Strickland</u>.  There is no violation of the right to testify where the defendant merely acquiesced during trial to his attorney's recommendation that he not testify, even if the defendant decides later, in hindsight, that he should have testified.  <u>Jordan</u>, 34 F.3d at 312.

King does not dispute that he had a prior criminal record or that he had already been convicted of, and was serving a sentence for, the prior crime for which he was being sought as a fugitive.[53]  Even assuming that counsel did in fact advise King not to testify, the record demonstrates that such advice was based on legitimate grounds.

The risk of placing King on the stand and exposing him to examination about his prior crime outweighed any benefit his testimony could have lent to his defense.  King does not deny any of the facts about his wild driving.  As discussed above, there was more than sufficient evidence to support the attempted manslaughter and flight from officers verdicts.  King, therefore, has not demonstrated that, but for counsel's advice not to testify, the outcome of the trial would have been different.

---

[53] <u>See</u>, <u>Id</u>., p. 6.

For these reasons, and those stated previously in addressing the right to testify, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Strickland.  He is not entitled to relief on this claim.

C.    Failure to Explore or Prepare an Intoxication Defense

King alleges that his counsel was ineffective when he did not raise an intoxication defense.  King places significance on a police internal affairs report which mentioned that he took two "zanbars"[54] and was drinking while he hid in the woods prior to the chase at issue.

Although he references the internal affairs report as "Exhibits #5 and #6," no such exhibits are attached.  King did attach to his petition a medical screening form from his arrest by the St. Tammany Parish Sheriff's Office, which indicates that he did not appear to be under the influence of drugs or alcohol.[55]

The trial record also indicates that King hid in the woods several hours before the officers finally saw him, dressed in camouflage, approaching the truck in the apartment parking lot.[56]  The officers' efforts to find him lasted through the night.[57]  Thus, the fact that he may have been drinking hours before was of no moment.  There is nothing in the

---

[54]This apparently refers to the prescription medication xanax.

[55]Rec. Doc. No. 3-5, p. 48.

[56]Id., pp. 33, 73.

[57]Id., pp. 33-34.

35

record to indicate that King was intoxicated at the time of his arrest.  King has not shown a basis for counsel to have pursued an intoxication defense, or that the failure to do so fell outside of the broad parameters of sound trial strategy.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, <u>Strickland</u>.  He is not entitled to relief on this claim.

D.      <u>Failure to file a Writ Application with the Louisiana Supreme Court</u>

King alleges that his counsel was ineffective for failure to seek review in the Louisiana Supreme Court after the ruling of the Louisiana First Circuit on his out-of-time appeal.  He has failed to state a basis for relief.

The United States Court of Appeals for the Fifth Circuit has held that the constitutionally secured right to counsel ends when the appellate court enters its decision affirming the conviction.  <u>Moore v. Cockrell</u>, 313 F.3d 880, 883 (5th Cir. 2002).  The Sixth Amendment "right to the assistance of counsel only extends to the first appeal of direct right and not to discretionary state appeals or certiorari petitions to the United States Supreme Court."  <u>Wainwright v. Torna</u>, 455 U.S. 586 (1982) (holding that since petitioner had no constitutional right to counsel to pursue discretionary review, he was not deprived of effective assistance of counsel by his retained counsel's failure to timely file an application for certiorari); <u>Olalumade v. Johnson</u>, 220 F.3d 588, 588 (5th Cir. 2000).  Thus, there is no right to counsel beyond that point or right to have counsel

prepare petitions for discretionary review.  See Ross v. Moffitt, 417 U.S. 600, 619 (1974).

Counsel, therefore, did not act in a constitutionally deficient manner when he failed to pursue discretionary review after King's appeal.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  King is not entitled to relief on this claim.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Richard King for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[58]

New Orleans, Louisiana, this _____1st_____ day of March, 2011.

_____

JOSEPH C. WILKINSON, JR.

UNITED STATES MAGISTRATE JUDGE

---

[58]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.